UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Robert J. Cooper, Jr.,                       Case No. 3:23-cv-1118

          Plaintiff,

     v.                                               MEMORANDUM OPINION
                                                         AND ORDER

General Truck Sales of Toledo
LLC, *et al.,*

          Defendants.


### I.     INTRODUCTION

Defendants General Truck Sales of Toledo, LLC, and Timothy A. Norts move for summary judgment of the limited issue of whether Ohio's statutory cap on damages for noneconomic losses applies in this case. (Doc. No. 20). Plaintiff Robert J. Cooper, Jr. filed a brief in opposition, (Doc No. 22), and Defendants filed a brief in reply. (Doc. No. 23). For the reasons stated below, I deny Defendants' motion.

### II.     BACKGROUND

On November 1, 2021, Plaintiff was injured in a car accident in Toledo, Ohio. (Doc. No. 22-1 at 24). Specifically, Plaintiff allegedly suffered serious injuries to his neck, shoulder, and bicep, which required surgical care. (*Id.* at 24-26).

On January 11, 2022, Plaintiff underwent a left shoulder arthroscopy, rotator cuff repair, and biceps tenodesis to remedy the damage to his shoulder and arm. (Doc. No. 22-2 at 9). The surgical procedure included the permanent implantation of two corkscrew anchors, a swivelock, and a bicep

tendon button. (Doc. No. 22-1 at 13). Two weeks post-surgery, it became apparent that the biceps tenodesis procedure had failed. (Doc. No. 22-1 at 17). The unsuccessful surgery left Cooper with a "Popeye deformity," wherein the bicep muscle drops, creating an atrophied region above the bicep. (Doc. No. 22-1 at 17).

On January 25, 2022, Plaintiff underwent a surgical revision to repair the bicep, requiring the placement of additional surgical hardware. (*Id.* at 18). While the biceps tenodesis procedure was successful, the surgery failed to correct the "Popeye deformity," leaving Plaintiff with scarring, a sunken region above the bicep, intermittent pain, and limited range of motion in the left shoulder. (Doc. No. 20-1 at 8-9); (Doc 22-1 at 20). Both Plaintiff and Defendant submitted photos of Plaintiff's alleged deformity.[1]



*Figure 1: Defendant's Exhibit B. (Doc. No. 20-2 at 4). Taken April 23, 2024.*

---

[1] Neither party submitted photos of Plaintiff's uninjured arm for comparison.

2



*Figure 2: Plaintiff's Exhibit # 4 (Doc. No. 22-1 at 20)*



*Figure 3: Plaintiff's Exhibit #5 (Doc. No. 22-1 at 22)*

The record contains expert reports concerning the nature of Plaintiff's injuries. (Doc. No. 22-1 at 24-30); (Doc. No. 22-2 at 8-11). Defendants retained Dr. Glenn E. Whitted, a Diplomate to the American Board of Orthopedic Surgery and a Fellow of the American Academy of Orthopedic Surgeons. (Doc. No. 22-1 at 30). Plaintiff hired Dr. Jacob Daniel Miller, a board-certified member of the American Board of Orthopedic Surgery, and the Medical Director for the University of Toledo Medical Center – Physical Therapy Services and Graduate Assistant Program. (Doc. No. 22-2 at 4).

Both experts conducted an independent examination of Plaintiff. (Doc. No. 22-1 at 24-30); (Doc. No. 22-2 at 8-11). While they agreed that Plaintiff exhibited weakness and restricted movement in the left shoulder, they disagreed about the severity of Plaintiff's deformity. (Doc. No. 22-1 at 27-29); (Doc. No. 22-2 at 10-11). In Dr. Whitted's estimation, although Plaintiff had visible scarring on the bicep and left shoulder, "there is a mild prominence of the biceps muscle . . . [that] does not stand out as a remarkable 'Popeye' look to the muscular contours." (Doc. No. 22-1 at 28). Dr. Whitted further reported that Plaintiff had "no complaint of activity related pain." (*Id.* at 29).

Dr. Miller, on the other hand, observed a visible "Popeye deformity," and an "incision in the axillary region," accompanied by "atrophy in the underlying soft tissue" of the left bicep. (Doc. No. 22-2 at 10). He noted that Plaintiff "continues to have left shoulder pain, stiffness and weakness" that would likely persist. Dr. Miller attributed Plaintiff's failure to "return to a full active lifestyle," at least in part, to "setback[s]" associated with the failed biceps tenodesis. (*Id.*).

On June 2, 2023, Cooper filed suit against Norts, General Truck Sales of Toledo, LLC, and General Truck Sales, Inc., alleging a variety of negligence claims. (Doc. No. 1). Defendants seek a ruling that Cooper's claim for non-economic damages arising out of their alleged negligence is subject to a statutory limit set forth in Ohio Revised Code § 2315(B).

4

### III. STANDARD

Summary judgment is appropriate if the movant demonstrates there is no genuine dispute of material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All evidence must be viewed in the light most favorable to the nonmovant and all reasonable inferences are drawn in the nonmovant's favor. *See, e.g., Ondo v. City of Cleveland*, 795 F.3d 597, 603 (6th Cir. 2015) (citing cases). A factual dispute is genuine if a reasonable jury could resolve the dispute and return a verdict in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013).

### IV. ANALYSIS

Ohio law generally imposes a cap on the amount of noneconomic damages a plaintiff may recover in a tort action for injury or loss to person or property. Ohio Rev. Code § 2315.18(B)(2). But there are two enumerated exceptions to this general rule:

> There shall not be any limitation on the amount of compensatory damages that represents damages for noneconomic loss that is recoverable in a tort action to recover damages for injury or loss to person or property if the noneconomic losses of the plaintiff are for either of the following:
>
> (a) Permanent and substantial physical deformity, loss of use of a limb, or loss of a bodily organ system;
>
> (b) Permanent physical functional injury that permanently prevents the injured person from being able to independently care for self and perform life-sustaining activities.

Ohio Rev. Code § 2315.18(B)(3).

"Prior to the trial in the tort action . . . , any party may seek summary judgment with respect to the nature of the alleged injury or loss to person or property, seeking a determination" as to whether the general noneconomic damages cap applies. Ohio Rev. Code § 2315.18(E)(2). When ruling on such a motion, my role "is limited to the threshold determination of whether there is

5

sufficient evidence to submit the issue of the nature of the injury to the jury." *Ohle v. DJO Inc.*, Case No. 1:09-CV-02794, 2012 WL 4505846, at *3 (N.D. Ohio Sept. 28, 2012).

Here, Defendants argue neither exception applies and, therefore, Plaintiff's noneconomic damages are subject to Ohio's noneconomic damages cap. (Doc. No. 20).

Plaintiff implicitly concedes the second exception found in § 2315.18(B)(3)(b) does not apply. (*See generally* Doc. No. 22). But he argues, "the record evidence of [his] injuries . . . raises a clear jury question as to whether [he] has sustained a 'permanent and substantial physical deformity' as contemplated under . . . § 2315.18(B)(3)(a)." (*Id.* at 8). Specifically, he contends his "deformed bicep, visible atrophy, visible surgical scarring, implantations of internal hardware, and restricted use of his left arm clearly constitute objective deformities, and their significance should be submitted to a jury to decide." (*Id.* at 6).

Defendants acknowledge Plaintiff "has a left bicep with a slight indentation and . . . may still experience some pain and limitations" and do not challenge the permanency of Plaintiff's condition. (Doc. No. 23 at 7-8). But Defendants maintain Plaintiff's injuries are not significant enough to "permit unlimited noneconomic damages." (*Id.* at 8). Put simply, the dispute here is whether Plaintiff has a "substantial physical deformity," as contemplated by § 2315.18(B)(3)(b).

The Ohio legislature did not define the phrase "permanent and substantial physical deformity." *Adams v. Durrani*, 183 N.E.3d 560, 573 (Ohio Ct. App. 2022). Nevertheless, "[s]ave for instances when a plaintiff displays a single minor scar that is clearly not a permanent and substantial deformity, caselaw has largely encouraged courts to submit the issue to the jury when 'reasonable minds might disagree about the nature [and severity] of a plaintiff's injuries.'" *Serafin v. Brown*, Case No. 4:22-CV-0467, 2023 WL 4490404, at *3 (N.D. Ohio July 11, 2023) (quoting *Ohle*, 2012 WL 4505846, at *4). *See also Ohle*, 2012 WL 4505846, at *4 ("[I]ssues concerning the nature and severity

6

of a plaintiff's injury should be resolved by jury interrogatory at trial.") (citing *Bransteter v. Moore*, Case No. 3:09 CV 2, 2009 WL 152317 (N.D. Ohio Jan. 21, 2009)).

"Courts struggle with what counts as a 'deformity.'" *Jackson v. Transport Corp. of Am., Inc.*, Case No. 1:21-v-01325, 2023 WL 3058158, at *11 (N.D. Ohio April 24, 2023). Some have denied a motion for summary judgment when the plaintiff suffered "multiple misshapen, unnatural, and distorted conditions" requiring implantation of medical hardware. *Ross v. Home Depot USA Inc.*, Case No. 2:12-cv-743, 2014 WL 4748434, at *6-7 (S.D. Ohio Sept. 23, 2014). Scarring – even healed scarring – can constitute "sufficient evidence for the jury to determine that [a plaintiff's] injuries [amount] to a 'permanent and substantial physical deformity . . . .'" *Torres v. Concrete Designs Inc.*, 134 N.E.3d 903, 927, 931 (Ohio. App. Ct. 2019).

And altered musculature accompanied by pain and scarring can meet the evidentiary threshold. *Mowry v. United States*, Case No. 5:19-cv-627, 2023 WL 3069359, at *5 (N.D. Ohio April 25, 2023) (holding skin graft, post-surgery change to the musculature in the calf, and consistent pain qualified as a "permanent and substantial deformity"). *See also Farm Bureau Gen. Ins. Co. of Mich. v. Schneider Nat'l Carriers, Inc.*, Case No. 4108494, 2023 WL 4108494, at *13 (S.D. Ohio June 21, 2023) (determining that scarring and curling of toes are sufficient evidence to send nature of the injury to the jury); *Cotter v. Trs. of Bethany Coll.*, Case No. 4:21-CV-01670, 2023 WL 5432521, at *3 (N.D. Ohio Aug. 23, 2023) (finding that post-treatment scarring and alleged deformity of the leg met the evidentiary threshold); *Cawley v. Eastman Outdoors, Inc.*, Case No. 1:14-CV-00310, 2014 WL 5325223, at *7 (N.D. Ohio Oct. 17, 2014) (concluding that scars accompanied by internal and external deformities to the hand could qualify as a serious disfigurement).

Here, there is no dispute that Plaintiff's injury is not a "single minor scar" but also an indentation in his bicep. (Doc. No. 22-1 at 20, 22). And reasonable minds could disagree about the nature and severity of Plaintiff's injuries. Plaintiff submitted expert reports and photographs

7

describing and depicting the injuries to his left bicep and shoulder. (*Id.* at 20-30); (Doc. No. 22-2 at 8-11). The photos show visible scarring and a prominent indentation in Plaintiff's arm. (Doc. No. 22-1 at 20, 22).

Plaintiff underwent multiple surgeries, each requiring the insertion of medical hardware into his arm. (Doc. No. 22-1 at 13, 18). And while he does not experience pain at rest, Dr. Miller opines that Plaintiff will continue to suffer when actively using his left arm and will likely never recover full range of motion without additional surgical intervention. (Doc. No. 22-2 at 10-11). To be sure, Plaintiff's injuries are not as severe as some in the cases I cited above. Even so, the standard for summary judgment is not if a reasonable jury *will* find for the plaintiff, but if they *could* find for the plaintiff. *Anderson*, 477 U.S. at 248.

Viewed in the light most favorable to him, Plaintiff's injuries are sufficient to create a question of fact as to whether his degree of deformity is sufficient to count as "permanent and substantial." Therefore, I conclude Defendants are not entitled to summary judgment on this issue.

### V. CONCLUSION

For the reasons stated above, I deny Defendants' motion for partial summary judgment. (Doc. No. 20).

So Ordered.

s/ Jeffrey J. Helmick<br>
United States District Judge